| 61 | 257 |
|----|-----|
| 165s | 295 |

</div>

## Ellen Stanley and Philiskey E. Stanley v. Chicago Trust and Savings Bank.

1. FORECLOSURE—*Defense of Usury.*—In a proceeding to foreclose a trust deed, where the defense of usury is set up in the answer the complainant may remit all claims for interest, and have a decree for the amount of money actually advanced and other legal charges.

2. ASSIGNMENTS OF ERROR—*When too General.*—Assignments of error, such as " the court erred in entering the final decree,"and that " the decree is in other respects erroneous," are too general. The very error relied upon should be definitely and clearly presented, and the court not compelled to go beyond the assignment itself to learn what the question is.

Foreclosure.—Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed December 12, 1895.

JOHN S. BROWN, attorney for appellants.

ASHCRAFT, GORDON & COX, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This appeal is from a decree of sale entered in a suit to foreclose a trust deed, in the nature of a mortgage, executed by the appellants on February 10, 1893.

The trust deed, as recited therein, was given to secure the promissory note made by appellants, of the same date, for $10,000, at two years, with six per cent interest, evidenced by four coupon or interest notes for $300 each, payable half-yearly.

The bill was filed May 22, 1894, and alleged default in the payment of the two interest notes payable August 10, 1893, and February 10, 1894, and in the payment of taxes by appellants, and the payment thereof by appellee to the amount of $126.25, and that by reason thereof complainant, appellee, as the holder of the notes, both principal and interest, had elected, as it might do under the provisions of the trust deed, to declare the whole indebtedness due.

Joseph Medill, the holder of a prior incumbrance by way of mortgage upon the same premises, was made a party defendant, and filed a cross-bill in said cause, praying for a decree of foreclosure thereof in his own behalf, as such mortgagee.

No question is made against the said cross-complainant upon this record.

As between the parties to this appeal, the decree found that the sum of $6,105.67 was due and owing to the appellee, and the premises were ordered to be sold to satisfy that amount, after first satisfying the amount found to be due Medill under said first mortgage.

The principal defense urged to the decree is that the transactions out of which it grew were usurious.

The first transaction between the parties occurred on or about April 26, 1893, when the appellant P. E. Stanley gave his thirty day note for $5,000 to the appellee, and received therefor the sum of $4,875, and hypothecated said $10,000

note and trust deed, as collateral security to said $5,000 note.

When, at the end of thirty days, that $5,000 note matured, Stanley was unable to pay it, but instead, wanted to borrow $1,000 in addition.

As a condition of obtaining that additional amount, he was required by Mr. Tolman, the president of the appellee bank, to purchase ten shares of the capital stock of the appellee bank, of the nominal par value of $100 a share, for and at the price of $200 a share. That being arranged, Stanley, on May 26, 1893, gave to appellee his eleven new notes; one for $5,000, in renewal of the former note for that sum, dated April 26, 1893, one for $1,000, being for the additional money needed by him, and nine others for $200 each, aggregating $1,800, on account of the purchase of said ten shares of bank stock (which shares he assigned back to the appellee as further security), and received therefor $650 in cash, and a credit of $200 on account of the purchase of stock.

The notes for $5,000 and $1,000, respectively, were made payable in thirty days, and the nine notes for $200 each, were made payable in 1, 2, 3, 4, 5, 6, 7, 8 and 9 months.

On June 26, 1893, when the two notes for $5,000 and $1,000, dated May 26th, matured, Stanley gave his new note for $6,000 at thirty days, in renewal of the same, and paid in cash $150 as interest thereon, and also paid one of said $200 notes in cash.

This renewal process was repeated on the 26th day of each month thereafter, until and including October 26, 1893, and on each occasion the $10,000 note and trust deed were re-hypothecated as collateral security.

At that date he had thus paid $1,200 on account of the purchase of the bank stock, and there still remained four of said $200 notes unpaid, besides having paid, as a simple computation shows, interest or discount on the notes for $6,000 at the rate of two and one-half per cent per month, or thirty per cent per annum.

When, on October 26th, Stanley gave his last $6,000 note,

and perhaps at an earlier renewal thereof, it was provided in the collateral clause thereof, that said $10,000 note and trust deed should stand pledged for the four unpaid notes given for the bank stock, as well as for said $6,000 note.

The decree found the sum of $6,105.67 to be due to appellee, which was $444.22 less than was reported by the master.

It does not appear by the record what items allowed by the master were not included in the sum found by the decree, but a statement in appellee's brief aids us to the conclusion that the difference exists in the voluntary rejection by appellee of all interest on the moneys actually advanced by the appellee. It appears that in both the master's report and in the decree, are included four of the $200 notes that P. E. Stanley executed for the bank stock, with interest at seven per cent as therein provided.

Whether that purchase of bank stock by P. E. Stanley was so forced upon him by Mr. Tolman, president of the appellee bank, as a condition of the extension of the $5,000 note, then due, and of the discount of the note for an additional $1,000, and was an extortionate and fraudulent device resorted to for greater usury, and therefore a purchase that Stanley might avoid and claim the benefit of in the accounting to the extent of his payments on account thereof, we think may not be inquired into under the averments of the answer of the appellants, and if it might be, the evidence in that behalf is too deficient to entitle the appellants to relief by reason thereof.

Another consideration in connection with the notes given by P. E. Stanley for the bank stock, is whether the $10,000 note and trust deed could, as against Ellen Stanley, be pledged, as they were by P. E. Stanley, as collateral security for his notes given for that stock.

The $10,000 note was dated February 10, 1893, and was made payable to the order of the makers thereof, by the name of "ourselves," and was indorsed on its back by the two makers, Ellen Stanley and Philiskey E. Stanley. The trust deed to secure the note was dated and acknowledged

on the same date with the note, and was made to the Title Guarantee and Trust Company of Chicago, as trustee. Whatever the fact may have been, it does not appear by any evidence in the cause, that when appellant P. E. Stanley took the note and trust deed to appellee, on or about April 26, 1893, which was more then two and one-half months after their making, and then used them as collateral security for the money then borrowed by him, that appellee had any notice of any limitation or restriction upon P. E. Stanley as to the use he should make of them, and there is no evidence that appellee had any such notice at any subsequent time.

Unless some presumption against the right of P. E. Stanley to hypothecate the note for any lawful purpose, arises from the mere fact that he was not only one of the makers and indorsers, but was also the holder of the note, we do not understand why appellee might not as well deal with the note and trust deed as collateral security to notes given for the purchase of stock, as for borrowed money. We know of no rule of law that forbade it. It is true the master does say in his report that "the defendants, Ellen Stanley and Philiskey E. Stanley, her husband, executed to said complainant their certain note nominally for the sum of $10,000, which note was given as collateral security for money to be loaned to said defendants Stanley by the complainant bank," but such statement, except in so far as the note was given to appellee as collateral security for money to be loaned, is not supported by any evidence in the cause. The decree, however, that was entered, found the fact in that regard to be as it was.

Under the insufficient averments of the answer of the appellants, and the evidence, there was, we think, no error committed in including in the sum found to be due appellee the amount of the four unpaid notes given for the bank stock.

While, as already shown, usury was paid for the money that was borrowed, still, the decree having been entered for only the actual money loaned without any interest whatever, all that equity demands has been done. In other

words, the decree being for only the money actually advanced and paid over to P. E. Stanley—less the payment of all interest, usurious or otherwise, made by him thereon—and for the four unpaid notes and interest thereon given for the bank stock, and for the amount paid for taxes with interest, and for the solicitor's fee, we think it ought to stand.

We do not consider the question argued by counsel for appellant, that there is an inconsistency between the relief prayed by the bill, which was for a foreclosure for non-payment of the $10,000 note, and that granted by the decree, which was upon the notes given for the money that was borrowed and for the stock that was purchased, because such objection is not raised by any of the assignments of error.

The third and ninth assignments of error are, that the court erred "in entering the final decree," and that the "decree is in other respects erroneous." These assignments are the only ones that may be regarded as in any way tending to raise the question argued, and they are too general.

"The very error relied upon should be definitely and clearly presented, and the court not compelled to go beyond the assignment itself to learn what the question is." 2 Encyclopædia of Pl. and Pr., 943.

The decree of the Superior Court is affirmed.